# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CAPREL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 09145 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SPECIALIZED LOAN SERVICING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Robert Caprel brought this suit against Specialized Loan Servicing, Inc. (which calls itself SLS), alleging that SLS violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*[1] Caprel says that, back in Fall 2015, SLS sent his lawyer two letters in an attempt to collect on Caprel's mortgage debt. R. 13, Second Am. Compl.[2] Those letters, according to Caprel, contained false and misleading representations under § 1692e. *Id.* Caprel also contends that the letters constituted unlawful harassment or abuse under § 1692d. *Id.* SLS now moves to dismiss Caprel's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 14, Mot. to Dismiss. For the reasons stated below, the motion to dismiss is granted, but Caprel will be given one more chance to amend the complaint.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.
[2]Citations to the docket are indicated by "R." followed by the docket entry.

# I. Background

For purposes of this motion, the Court accepts as true the allegations in the Second Amended Complaint (for convenience's sake, the "Amended Complaint"). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Caprel is an Illinois resident who defaulted on his mortgage debt. Second Am. Compl. ¶¶ 4, 11. After he defaulted, Caprel filed for bankruptcy on October 31, 2014; by February 2015, his mortgage debt was completely discharged. *Id.* ¶¶ 13, 14. SLS is a debt collector that acquired and serviced Caprel's defaulted mortgage loan. *Id.* ¶¶ 10-11.

On October 8, 2015 and November 8, 2015, months after the bankruptcy proceeding had ended, SLS sent a letter to Caprel's lawyer about his outstanding mortgage debt.[3] Second Am. Compl. ¶¶ 16, 19. The letters contained information

---

[3]Caprel attached these two letters—dated October 8, 2015 and November 8, 2015—to the Amended Complaint. R. 13-1, Exh. A, 10/08/2015 HAMP Solicitation Letter; R. 13-2, Exh. B, 11/08/2015 HAMP Solicitation Letter. It turns out, however, that SLS also had sent Caprel *himself* (that is, not his lawyer) another letter five months earlier, on June 10, 2015. *See* R. 20-2, Exh. B, 06/10/2015 HAMP Solicitation Letter. This letter notified Caprel that his "mortgage loan [wa]s in serious default," and encouraged him to submit a "Request for Financial Information" so that SLS could determine his eligibility for an alternative payment plan. *Id.* But—and this is important—Caprel did *not* attach this letter to his Amended Complaint, *see* Second Am. Compl.; instead, he only attached the letter to his response brief, without noting that he had not attached it to the Amended Complaint. *See* R. 20, Pl.'s Resp. Br.; Exh. B, 06/10/2015 HAMP Solicitation Letter. Caprel made no attempt to identify or explain the significance of the June 10, 2015 letter in his response brief. *See* Pl.'s Resp. Br. And, oddly enough, the language that Caprel's response brief says are supposedly quotes from the June 10, 2015 letter does not even appear in that letter.

Because the June 10, 2015 letter is neither referenced in, nor consistent with, the allegations in the Amended Complaint, the Court will not consider it in ruling on SLS's motion to dismiss. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint."); *Antelis v. Freeman*, 799 F. Supp. 2d 854, 868 (N.D. Ill. 2011) ("[T]he court can consider documents submitted in response to a motion to dismiss *if they are consistent with the complaint.*" (emphasis added)); *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (observing

about the Home Affordable Modification Program (HAMP), a government program that helps homeowners refinance or modify their mortgages, and encouraged Caprel (via his lawyer) to participate in the program. R. 13-1, Exh. A, 10/08/2015 HAMP Solicitation Letter; R. 13-2, Exh. B, 11/08/2015 HAMP Solicitation Letter.

Each letter displayed a bolded disclaimer at the top of the first page, which stated: "THIS [COMMUNICATION] IS FOR INFORMATIONAL PURPOSES ONLY." 10/08/2015 HAMP Solicitation Letter at 1; 11/08/2015 HAMP Solicitation Letter at 1. Both letters also contained a "Frequently Asked Questions" section that addressed general inquiries about mortgage loan defaults, HAMP loan modifications, and home foreclosures. 10/08/2015 HAMP Solicitation Letter at 15; 11/08/2015 HAMP Solicitation Letter at 3. This was one of the "FAQs":

> Q: Will My credit Score Be Affected by My Late Payments or Being in Default?
>
> A: The delinquency status of your loan will be reported to credit reporting agencies as well as your entry into a Repayment Plan, Forbearance Plan, or Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements.

Second Am. Compl. ¶¶ 18, 20; 10/08/2015 HAMP Solicitation Letter at 15; 11/08/2015 HAMP Solicitation Letter at 3.

---

that documents attached to a plaintiff's response to a motion to dismiss "'are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim.'" (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Based on the allegations in the Amended Complaint, the two letters sent to Caprel's lawyer in October and November 2015 are central to his FDCPA claims; the June 10, 2015 letter is not. In fact, the June 10, 2015 letter presents a whole new ballgame, particularly because SLS sent that letter directly to *Caprel*, not to his lawyer. As discussed later in this Opinion, *see* Section IV. at 24, Caprel may file a third amended complaint and attach the June 10, 2015 letter to it if he so desires (after which SLS may file another motion to dismiss). But for now, the Court will decide SLS's present motion to dismiss without considering the June 10, 2015 letter.

The October letter also contained another bolded disclaimer, which emphasized that the letter was only for informational purposes if the recipient was in bankruptcy or had their mortgage debt discharged in a bankruptcy proceeding:

> THE PURPOSE OF THIS COMMUNICATION IS TO OFFER YOU LOSS MITIGATION ASSISTANCE THAT MAY HELP YOU BRING OR KEEP YOUR LOAN CURRENT THROUGH AFFORDABLE PAYMENTS. IF YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING, OR HAVE PREVIOUSLY OBTAINED A DISCHARGE OF THIS DEBT UNDER APPLICABLE BANKRUPTCY LAW, THIS NOTICE IS FOR INFORMATION ONLY AND IS NOT AN ATTEMPT TO COLLECT THE DEBT.

10/08/2015 HAMP Solicitation Letter at 11.

Just weeks after his lawyer received the second letter from SLS, Caprel filed this action. R. 1, Compl. Caprel brings two claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Second Am. Compl. ¶¶ 23, 24. First, Caprel alleges that the two letters SLS sent to his lawyer amounted to "conduct the natural consequence of which [wa]s to harass, oppress, or abuse" in violation of 15 U.S.C. § 1692d. *Id.* ¶ 23. Second, Caprel alleges that the two letters, and more specifically, the "Frequently Asked Questions" sections of those letters, were "false, deceptive, or misleading" in violation of 15 U.S.C. § 1692e. *Id.* ¶¶ 18-20, 24. SLS now moves to dismiss the Amended Complaint for failure to state a claim. *See* Mot. to Dismiss.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give

the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Caprel brings two FDCPA claims under 15 U.S.C. §§ 1692d, 1692e against SLS based on the two letters that it sent to his attorney in October and November 2015. Second Am. Compl. ¶¶ 23, 24. In its motion to dismiss, SLS contends that the Amended Complaint should be dismissed for two reasons: first, SLS asserts that the letters are not even subject to the FDCPA because they were not sent "in connection

with the collection of a debt"—a prerequisite for triggering the FDCPA. Mot. to Dismiss at 7-13; *see also* R. 27, Def.'s Reply Br. at 6-10. Second, SLS asserts that even if the letters are subject to FDCPA scrutiny, the fact that they were sent to Caprel's *lawyer*, as opposed to Caprel himself, forecloses any possibility that the letters were false and misleading under § 1692e, or that they constituted harassment under § 1692d. Mot. to Dismiss at 4-7; *see also* Def.'s Reply Br. at 3-6. The Court addresses each of SLS's arguments in turn.

### A. Triggering the FDCPA: "In Connection with the Collection of Any Debt"

The first issue is whether SLS even triggered the FDCPA when it sent Caprel's lawyer the two HAMP solicitation letters in Fall 2015. To trigger the FDCPA, "two threshold criteria must be met": (1) the defendant must qualify as a "debt collector," and (2) the communication must have been made "in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010); *see also* 15 U.S.C. §§ 1692a (defining "debt collector"), 1692c (defining "communication in connection with debt collection"). SLS is a self-proclaimed debt collector, *see* 10/8/2015 HAMP Solicitation Letter at 1 ("THIS COMMUNICATION IS FROM A DEBT COLLECTOR."); 11/08/2015 HAMP Solicitation Letter at 1 (same), so the only issue is whether SLS sent the letters "in connection with the collection of [Caprel's discharged] debt." *Gburek*, 614 F.3d at 384.

Caprel asserts that the letters are subject to FDCPA scrutiny because SLS sent those letters in order to settle his previously-discharged mortgage debt. Second

6

Am. Compl. ¶ 17. SLS disagrees. Mot. to Dismiss at 7-13; Def.'s Reply Br. at 6-10. It contends that the bankruptcy-related disclaimer in the October letter and the absence of a demand for payment in both letters evidences that neither letter was an attempt to collect on Caprel's mortgage debt. Mot. to Dismiss at 2, 8. SLS also asserts that the relationship between the two parties—SLS held a lien on Caprel's property, so it was fully aware that his debt was discharged in bankruptcy— evidences that the letters were for informational purposes only, not to collect on a debt. *Id.* at 8-11. SLS maintains that it sent the letters in order to inform Caprel on how to avoid foreclosure on the mortgage lien. *Id.*

To figure out who is right, the Court must ask whether, when viewed *objectively*, the letters comprised communications made in connection with a debt. In *Ruth v. Triumph Partnerships*, the Seventh Circuit held that "whether a communication was sent 'in connection with' an attempt to collect a debt is a question of *objective fact*." 577 F.3d 790, 798 (7th Cir. 2009) (emphasis added). The court explicitly rejected using a *subjective unsophisticated consumer* standard to analyze the "in connection with" element of a FDCPA claim, reasoning that to do so would "stand the statute on its head": "Unscrupulous debt collectors could shield themselves from liability by disguising their collection letters as something else. The more deceptive the letters were, the more likely they would escape FDCPA liability." *Id.*

While it is clear after *Ruth* that the standard for analyzing the "in connection with" element is an objective one, it is not so clear from whose perspective—a

reasonable consumer or an unsophisticated one—that objective determination should be made. *See Ruth*, 577 F.3d 790. At least two courts in this District have implicitly analyzed the "in connection with" element from the point of view of an objective *reasonable consumer. See Preuher v. Seterus, LLC*, 2014 WL 7005095, at *2-3 (N.D. Ill. Dec. 11, 2014); *cf. Leeb v. Nationwide Credit Corp.*, 2013 WL 6169408, at *3 (N.D. Ill. Nov. 21, 2013), *aff'd sub nom.*, 806 F.3d 895 (7th Cir. 2015). In *Preuher*, the district court determined that a letter was not sent in connection with an attempt to collect a debt, and the court's analysis did not mention the hypothetical "unsophisticated consumer." 2014 WL 7005095, at *2-3. Instead, the court analyzed—objectively—whether the letter contained a demand for payment, the defendant's purpose behind sending the letter, and the content of the letter. *Id.*; *see also Leeb*, 2013 WL 6169408, at *3-4 (observing that "[a] consumer's state of mind is … *not* relevant to whether a particular communication attempts to collect a debt," and finding the "in connection with" element satisfied solely because the defendant "expressly demanded payment of a disputed debt"). And while courts in the Seventh Circuit have not explicitly applied an "objective reasonable consumer" standard when analyzing the "in connection with" element, other federal courts—relying on *Ruth*—have. *See, e.g., Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (citing *Ruth* after observing that "in determining at the motion to dismiss stage whether the Letter triggers the Act's notice provisions, we must view the communication *objectively*, asking whether Hart has plausibly alleged that a *consumer* receiving the communication could reasonably interpret it as being sent

'in connection with the collection of [a] debt' … ." (emphases added)); *Halberstam v. Glob. Credit & Collection Corp.*, 2016 WL 154090, at *3 (E.D.N.Y. Jan. 12, 2016) (relying on *Hart* and analyzing the "in connection with" element from the perspective of an "objective debtor"), *motion to certify appeal granted*, 2016 WL 2596041 (E.D.N.Y. May 5, 2016).

By contrast, a few courts have explicitly analyzed the "in connection with" element from the perspective of an objective *unsophisticated* consumer. *See, e.g.*, *Price v. Seterus, Inc.*, 2016 WL 1392331, at *4-5 (N.D. Ill. Apr. 9, 2016); *Stricklin v. Jefferson Capital Sys., LLC*, 2011 WL 5325735, at *6 (S.D. Ill. Nov. 3, 2011). In *Price v. Seterus, Inc.*, for example, the district court denied the defendant's motion to dismiss the plaintiff's FDCPA claim after reasoning that "an objective, *unsophisticated* consumer could have plausibly believed that the letters were being sent to collect a debt … ." 2016 WL 1392331, at *5 (emphasis added). Likewise, in *Stricklin v. Jefferson Capital Systems, LLC*, the court framed the "in connection with" issue from the perspective of an objective unsophisticated consumer: "[T]he question is whether an unsophisticated, but reasonable consumer would believe the debt collector sent the communication with the collection of a debt." 2011 WL 5325735, at *6; *id.* at *7 ("Further, despite a letter's overriding intent of notification of privacy rights, it could also have the effect of leading an *unsophisticated, but reasonable consumer* to believe the debt collector sent the communication in connection with the collection of a debt. (emphasis added) (citing *Ruth*, 577 F.3d at 798)). The point is that *Ruth* left unanswered how courts should approach the "in

9

connection with" element: from the perspective of an objective, reasonable consumer or an objective, unsophisticated one?

The Court need not definitively answer that question in this case (or at least not as this stage of the case), because the same result applies regardless of which perspective controls. Whether a communication was sent in connection with the collection of a debt is a "commonsense inquiry." *Gburek*, 614 F.3d at 385. In *Gbruek*, the Seventh Circuit identified three factors that courts should consider when analyzing whether the FDCPA applies to a communication: (1) the presence or absence of demand for payment; (2) the nature of the parties' relationship; and (3) the purpose and context of the communication. *Id.* at 384-86. Applying these factors to the letters at issue here—from anyone's perspective—establishes that the complaint adequately alleges that SLS sent the letters in an attempt to collect on a debt. To be sure, neither letter explicitly makes a demand for payment. *See* Exh. A, 10/08/2015 HAMP Solicitation Letter; Exh. B, 11/08/2015 HAMP Solicitation Letter. But the absence of a demand for payment is not dispositive. *Gburek*, 614 F.3d at 385 ("[T]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt."). And unlike the first factor, the second factor—that is, the relationship between Caprel and SLS—does weigh in favor of applying the FDCPA. This is because "the only relationship [SLS] had with [Caprel] arose out of … [Caprel's] defaulted debt." *Ruth*, 577 F.3d at 799. It is not as if SLS "s[ought] collection on a debt owed under a brand new payment plan, or

10

forbearance agreement that is current." *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998). Finally, the third factor also weighs in favor of applying the FDCPA because the purpose and context of the letters evidences SLS's intent to collect a debt. Even a reasonable consumer, despite the bankruptcy disclaimer and the "THIS IS FOR INFORMATIONAL PURPOSES ONLY" disclosure, *see* 10/08/2015 HAMP Solicitation Letter at 1, 11; 11/08/2015 HAMP Solicitation Letter at 1, would feel obligated to pay SLS for any past-due debt after reading the "Frequently Asked Questions" section in the letters. Remember that one of the answers in the FAQs section asserts that the debtor is delinquent in repaying the loan and warns that the delinquency will be reported to credit reporting agencies:

> Q: Will My Credit Score Be Affected by My Late Payments or Being in Default?
>
> A: The delinquency status of *your* loan will be reported to credit reporting agencies as well as your entry into a Repayment Plan, Forbearance Plan, or Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements.

10/08/2015 HAMP Solicitation Letter at 15 (emphasis added); *see also* 11/08/2015 HAMP Solicitation Letter at 3 (same). Other FAQs, like this one, also suggested that Caprel would face adverse consequences if he did not pay up. *See, e.g.*, 10/08/2015 HAMP Solicitation Letter at 4 ("Q: Why Did I Receive This Package? A: You received this package because we have not received one or more of *your* monthly mortgage payments and want to help *you find a foreclosure prevention option* or you have requested information on obtaining assistance." (emphases

added)); *see also* 11/08/2015 HAMP Solicitation Letter at 2 (same). So, even with the disclaimers in the letters, the amended complaint adequately alleges that a reasonable consumer would think that the FAQ answers implicitly threatened to report the debtor's delinquent loan and to foreclose on the debtor's house if he did not settle his debt. *See Whalen v. Specialized Loan Servicing, LLC*, 2016 WL 126919, at *4 (N.D. Ill. Jan. 11, 2016) (concluding that "the disclaimer did not necessarily detract from an interpretation that the letter was an attempt to induce plaintiff to make a payment" after reasoning that "defendant's representation in the disclaimer that the letter was not a demand for payment means little when at the same time defendant was telling plaintiff that she risked foreclosure if she did not pay up."). What's more, courts routinely deem communications that inform debtors about foreclosure alternatives as enough to satisfy the FDCPA's "in connection with" requirement. *See, e.g.*, *Gburek*, 614 F.3d at 386-87; *Whalen*, 2016 WL 126919, at *3-5; *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 872-73 (N.D. Ill. 2015). That is precisely the case here. Given the relationship between the parties, as well as the purpose and context of the two HAMP solicitation letters, Caprel has sufficiently established, at least at the pleading stage, that those letters were attempts to collect on his mortgage debt. So the letters fall under the FDCPA's purview. Now the question is whether the amended complaint adequately alleges that SLS violated §§ 1692d and e.

## B. 15 U.S.C. § 1692e: False or Misleading Representations

Caprel alleges that the FAQ sections in the two HAMP solicitation letters that SLS sent to his lawyer contained false or misleading language in violation of 15 U.S.C. § 1692e. Second Am. Compl. ¶¶ 18-20, 24; R. 20, Pl.'s Resp. Br. at 1 ("Plaintiff is arguing that the misleading statements in the two communications— as stated in the Complaint—are statements which would mislead a competent attorney."); *id.* at 2 ("[W]hat Plaintiff is arguing is that the threat or even the statement that Defendant is going to report Plaintiff's future delinquency to the credit bureaus is false because Plaintiff's Counsel finds it quite believable that Defendants will make such reports."). Section 1692e prohibits debt collectors from using false or misleading tactics to collect a debt: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "This is a broad prohibition, and while § 1692e has 16 subsections describing ways by which a debt collector could violate the FDCPA, that list is nonexhaustive[.]" *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citing *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002)). That Caprel did not identify a particular subsection of § 1692e in the Amended Complaint is of no matter; "a plaintiff need not allege a violation of a specific subsection in order to succeed in a § 1692e case[.]" *Id.* (citing *Ruth*, 577 F.3d at 794 n.2).

Generally, the standard for deciding whether a particular communication violates § 1692e "is different when the conduct is aimed at a lawyer than when it is aimed at a consumer." *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774

(7th Cir. 2007); *see also Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 2008 WL 4425444, at *2 (N.D. Ill. Sept. 26, 2008). Where a debt collector communicates directly with the *debtor*, the "unsophisticated consumer" standard governs whether a communication is misleading or deceptive under § 1692e. *Evory*, 505 F.3d at 774. Under that standard, a communication violates § 1692e if "a person of modest education and limited commercial savvy would be likely to be deceived." *Id*. But where, as here, the debt collector makes an allegedly misleading or deceptive representation to the debtor's *lawyer*, the "competent lawyer" standard governs. *Id.* at 774-75. The question then becomes whether the "representation … would be []likely to deceive a competent lawyer, even if [the lawyer] is not a specialist in consumer debt law … ." *Id.* at 775.

Where a debtor alleges instead that the communication was false, as opposed to misleading or deceptive, the "unsophisticated consumer" standard governs—no matter the targeted recipient. *Evory*, 505 F.3d at 775. This is because "[a] false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer." *Id.* There is one wrinkle, however: the competent lawyer standard may still apply to an allegedly false communication sent to the debtor's lawyer if the falsehood was readily discoverable by the lawyer. *Id.* (observing the unsophisticated consumer standard would apply to an allegedly false communication sent to the debtor's lawyer if "[t]he lawyer [is] *unable to discover the falsity* of the representation" (emphasis added)); *see also McGhee v. Weinerman & Assocs.*, 2015 WL 2401928, at *4 (E.D. Wis. May 20, 2015) ("Even if Weinerman did misrepresent

the ownership of the debt, competent counsel would be (and were) able to verify the ownership of the debt.").

So, while the "competent lawyer" standard applies to Caprel's claim that the October and November HAMP solicitation letters were misleading, the "unsophisticated consumer" standard governs the false-communication claim, unless the alleged falsity was readily discoverable. Under either standard, the communication must "confuse a significant fraction of the persons to whom it is directed" in order to hold a defendant liable under § 1692e. *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004).

### 1. Misleading or Deceptive Communication

Caprel contends that the HAMP solicitation letters are misleading because they make implicit threats to report his supposedly delinquent loan to credit reporting agencies. Second Am. Compl. ¶¶ 18-20, 24; 10/08/2015 HAMP Solicitation Letter at 15; 11/08/2015 HAMP Solicitation Letter at 3 (same); Pl.'s Resp. Br. at 1. What makes this threat misleading, Caprel argues, is that debt collectors are prohibited by law from reporting a bankruptcy-discharged debt—and Caprel had by then obtained a discharge—to credit reporting agencies as if the debt were still delinquent. Pl.'s Resp. Br. at 2. SLS, for its part, actually agrees with that legal principle—the law clearly bans reporting of bankruptcy-discharged debts as delinquent—which is why, according to SLS, no competent lawyer would be misled. Mot. to Dismiss at 4-7; Def.'s Reply Br. at 3-6. SLS emphasizes that the FAQ section states that "the delinquency will be reported '*in accordance with the requirements* of

the Fair Credit Reporting Act [FCRA] and the Consumer Data Industry Association.'" Def.'s Reply Br. at 4 (emphasis added) (quoting 10/08/2015 HAMP Solicitation Letter at 15). The letters are not misleading, SLS's argument goes, because a competent lawyer could readily discover that "[t]he [FCRA] rules require that after a bankruptcy discharge the creditor … shall not report the account delinquent." *Id.* (citing 16 C.F.R. pt. 600 app. § 607(b)(6) (2010)). Caprel's response to all this is an assertion, in his response brief that, based on the letters' FAQ sections, "[his lawyer] thinks it is very probable that [SLS] could carry out its threat to report delinquent mortgage payments to [Caprel's] credit bureaus." Pl.'s Resp. Br. at 2-3. Put another way, Caprel contends that, *despite* the legal ban on reporting bankruptcy-discharged debts as delinquent, his attorney feared that SLS would have done that anyway.

It is true that "a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for violation of sections 1692d and e." *Captain v. ARS Nat'l Servs., Inc.*, 505 F.3d 769, 778 (7th Cir. 2007).[4] In *Captain v. ARS National Services, Inc.*, for example, the debt collector represented to the debtor's lawyer that "a $15 daily charge would be added to the [debtor's] account balance until the debt was paid in full." *Id.* at 777. After observing that "[s]uch a charge, equivalent to an interest rate of 730 percent a year … would violate Indiana law," the Seventh Circuit held that the district court should not have dismissed the

---

[4]*Captain v. ARS National Services, Inc.* was one of four cases the Seventh Circuit consolidated for appeal and decided in *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769.

debtor's § 1692e claim just because "the lawfulness of the $15 a day representation … was made to a lawyer." *Id.* at 777-78.

Like the debtor in *Captain*, Caprel alleges that SLS's threat to impose an unlawful penalty—reporting his discharged mortgage loan—was misleading and deceptive. The problem here, however, is that the Amended Complaint (as distinct from Caprel's response brief) does not allege any facts suggesting that a competent lawyer would have been misled by SLS's threat to report. *See* Second Am. Compl. (Remember, the competent lawyer standard applies to Caprel's deceptive-communication claim.) Caprel attempts to correct this deficiency in his response brief, asserting that "[his lawyer] thinks it is very probable that [SLS] could carry out its threat to report delinquent mortgage payments to [Caprel's] credit bureaus," and that "[a]t the very least, [SLS's] statement that it could report delinquency to the credit bureaus, when it can[]not, misleads [his] [a]ttorney." Pl.'s Resp. Br. at 2-3. But the issue is whether a competent lawyer, not just Caprel's lawyer, would be misled by the communication. *Bravo v. Midland Credit Mgmt., Inc.*, 2014 WL 6980438, at *4 (N.D. Ill. Dec. 9, 2014) (dismissing the plaintiff's § 1692e claim after observing that "Bravo neither alleges nor argues that a [competent] lawyer receiving Midland's letters would consider them threatening"), *aff'd*, 812 F.3d 599, 603 (7th Cir. 2016). And Caprel's claim that "it is very probable" that SLS could follow through on its threat, Pl.'s Resp. Br. at 2, is beside the point—"a plaintiff's anecdotal proclamations of being confused will not suffice … 'unless a significant fraction of the population would be similarly misled.'" *Durkin v. Equifax Check*

*Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). That is, merely alleging that Caprel's attorney thought SLS would carry out its threat is not enough. To survive the dismissal-motion stage, Caprel needed to allege that a competent lawyer would have taken SLS's threat seriously and he needed to allege facts to make that contention plausible—for example, by alleging that debt collectors often illegally report discharged debts to credit reporting agencies. This he did not do.[5] Caprel's deceptive-communication claim, therefore, must be dismissed.

## 2. False Communication

In addition to alleging that SLS's threat to report Caprel's delinquent loan was misleading, Caprel also alleges that the threat was false. Pl.'s Resp. Br. at 2. Though by no means crystal clear, Caprel's argument goes something like this: because the FCRA prevents debt collectors from reporting discharged debtors' loans to credit reporting agencies as delinquent, SLS's threat that it could report Caprel's delinquent loan unless he paid up was false. *Id.* For its part, SLS asserts that the alleged threat was not false because the FCRA indeed does prohibit reporting discharged debts and the letters assured Caprel that "SLS shall report in compliance with the law." Def.'s Reply Br. at 4-6.

As explained earlier, the "unsophisticated consumer" standard generally governs *false*-communication claims under § 1692e, regardless of whether the debtor or the debtor's attorney received the communication. *Evory*, 505 F.3d at 775.

_____

[5]Because the amended complaint is being dismissed without prejudice, Caprel might be able to allege the necessary facts in the next amended complaint. What he cannot do is rely on the current response brief to fix the deficiencies.

In *Evory*, however, the Seventh Circuit suggested that the competent-lawyer standard could still apply to an allegedly false communication sent to the debtor's lawyer if the falsehood was readily discoverable by the lawyer:

> A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be *unable to discover the falsity of the representation without an investigation* that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer.

505 F.3d at 775 (emphasis added); *see also, e.g.*, *McGhee*, 2015 WL 2401928, at *4 (applying the competent lawyer standard to a false communication claim sent to the debtor's lawyer because "competent counsel would be (and were) able to verify the ownership of the debt.").

Regardless of what standard applies, Caprel has failed to adequately allege that SLS falsely represented that it had the right to report the account as delinquent. SLS represented that it could only report a debtor's delinquent loan "*in accordance with the requirements* of the [FCRA] and the Consumer Data Industry Association … ." 10/08/2015 HAMP Solicitation Letter at 15 (emphasis added); *see also* 11/08/2015 HAMP Solicitation Letter at 3 (same). By explicitly maintaining that it would only report in compliance with the law, SLS acknowledged that it could not unlawfully report Caprel's delinquent loan in violation of the FCRA.[6] *Cf.*

---

[6]The Federal Trade Commission's commentary on the FCRA provides that a discharged debt can be reported on a borrower's credit report, but with severe limits on what can be said about it. *See* 16 C.F.R. pt. 600 app. § 607(b)(6) (2010) ("A consumer report may include an account that was discharged in bankruptcy … as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt."). The discharged debt of course cannot be reported as delinquent.

*Longo*, 2008 WL 4425444, at *5 (reasoning that letter stating that the defendant would charge a $7.50 fee if the debtor elected to pay by phone only "implie[d] that the fee is legally permissible, it d[id] not explicitly state as much. Thus, even if the fee is, as plaintiff asserts, prohibited under the FDCPA, the language in the letter regarding the fee cannot fairly be characterized as a false statement"). Because Caprel has failed to allege facts establishing that the credit-reporting language, when viewed together with the FCRA-requirements language, constituted a false statement, Caprel's false-communication claim cannot go forward.

It is worth adding that *even if* the credit reporting language was false on its face, Caprel's claim would still fail under the competent-lawyer standard. *See Evory*, 505 F.3d at 775 (competent-lawyer standard applies where lawyer can readily investigate whether the defendant's representation was false). This is because the alleged falsehood that Caprel complains of was readily discoverable: it would not have taken much investigating for a competent lawyer to learn that the FCRA prohibits debt collectors from reporting discharged debtors' delinquent loans. *See* 16 C.F.R. pt. 600 app. § 607(b)(6) (2010); *see also Evory*, 505 F.3d at 774 (observing that a competent lawyer "would not have to be an expert on the [FDCPA] to be able to look it up and discover" whether the Act governed a particular communication); *Longo*, 2008 WL 4425444, at *6 ("In delineating statements that would be actionable even if only communicated to a consumer indirectly through her lawyer, the Seventh Circuit spoke of '[a] false claim of *fact*,' such as a dunning letter that 'misrepresents the unpaid balance of the consumer's debt.'" (quoting *Evory*, 505

F.3d at 775)). Indeed, it would be surprising if a lawyer who guided a debtor through bankruptcy did not already know, without the need for further research, that the FCRA prohibits debt collectors from reporting discharged debts as delinquent. Under the competent-lawyer standard, the letters did not make a false statement, when all the statements in each letter are viewed together.

### C. 15 U.S.C. § 1692d: Harassment or Abuse

Finally, Caprel alleges that the two HAMP solicitation letters constitute unlawful harassment or abuse under § 1692d. Caprel takes particular issue with the fact that the letters SLS sent to his lawyer "told [Caprel] he was responsible for a debt that legally he was not." Second Am. Compl. ¶ 23. For its part, SLS ostensibly relies on the same argument to dismiss Caprel's § 1692d claim as it did his § 1692e claim: "[Caprel's] counsel's fear or belief that the debt collector will later violate the law by acting contrary to what it says it will do in the communication does not support a claim under § 1692e or § 1692d of the FDCPA." Def.'s Reply Br. at 6.

Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In addition to broadly prohibiting harassing or abusive collection practices, § 1692d contains six subsections that identify particular ways in which a debt collector violates the FDCPA. *See, e.g.*, *id.* § 1692d(1) ("use or threat of use of violence or other criminal

means to harm the physical person, reputation, or property of any person" violates § 1692d); *id.* § 1692d(2) ("use of obscene or profane language" violates § 1692d).

Because "a lawyer is less likely to be … intimidated, harassed, and so forth … than a consumer," courts apply the competent-lawyer standard when analyzing whether a communication sent to the debtor's lawyer violates § 1692d. *Evory*, 505 F.3d at 774. The defendant's intent is irrelevant; rather, the only question is whether "the natural consequence" of the defendant's conduct was to harass, oppress, or abuse. *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774-75 (7th Cir. 2003). When making that determination, courts examine both the content and the context of the communication.. *See, e.g.*, *Harrer v. RJM Acquisitions, LLC*, 2012 WL 162281, at *6 (N.D. Ill. Jan. 19, 2012); *Chapman v. Ontra, Inc.*, 1997 WL 321681, at *4 (N.D. Ill. June 6, 1997). In *Harrer*, for example, the district court dismissed the debtor's § 1692d claim after reasoning that the debt collector only "mail[ed] one collection letter" that "did not include abusive or harassing language; it merely stated that 'Wener Herrer' owed money on his Doubleday Book Club account and offered three opportunities to settle the account." 2012 WL 162281, at *6. Likewise, in *Chapman*, the district court also dismissed the plaintiff's § 1692d claim, concluding that the collection letter at issue was neither "harassing [n]or abusive in its tone or language." 1997 WL 321681, at *4.

Like the letters in *Harrer* and *Chapman*, the October and November HAMP solicitation letters are also void of any harassing or abusive language. *See* 10/08/2015 HAMP Solicitation Letter; 11/08/2015 HAMP Solicitation Letter. What's

more, it does not appear that there is any case in which a court held that a collection letter sent to the debtor's lawyer amounted to a § 1692d harassment violation (as distinct from other parts of the FDCPA) merely because the letter stated that "[the debtor] was responsible for a debt that legally he was not." Second Am. Compl. ¶ 23. To be sure, the Seventh Circuit observed in *Evory* that "a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a violation of sections 1692d and e." 505 F.3d at 778. But there is a difference between harassing a debtor with threats of illegal penalties versus informing the debtor that a report might be made to credit-reporting agencies "in accordance with the [law]." 10/08/2015 HAMP Solicitation Letter at 15; 11/08/2015 HAMP Solicitation Letter at 3.

And even assuming that sort of conduct was actionable under § 1692d, Caprel's claim would still fail: nowhere in his Amended Complaint or opposition brief does Caprel allege facts establishing that a *competent lawyer* would be intimidated or harassed by SLS's threat to report the debt. *See* Second Am. Compl. In fact, the Amended Complaint is void of any allegation that *anyone* felt harassed, oppressed, or abused by the two letters whatsoever. *See id.* Caprel's response brief is similarly deficient. *See* Pl.'s Resp. Br. As Caprel's § 1692e claims failed, so too does this one. Caprel's § 1692d claim is dismissed.

## IV. Conclusion

For the reasons stated above, SLS's motion to dismiss [R. 14] is granted. For now, however, the complaint is dismissed without prejudice, because SLS has yet to

file an answer in this case and discovery is not yet underway. But because Caprel has already twice amended the complaint, the Court will set a Rule 16(b) deadline to file what would be the Third Amended Complaint. The deadline is September 21, 2016. If Caprel does not file an amended complaint by that deadline, then the dismissal will convert into a dismissal with prejudice. The status hearing of September 8, 2016, is reset to September 28, 2016, at 9:30 a.m. In the meantime, the Court encourages the parties to engage in settlement negotiations in parallel to the litigation track.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 7, 2016