UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CAPREL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 09145 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SPECIALIZED LOAN SERVICING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Robert Caprel brought this suit against Specialized Loan Servicing, Inc. (which calls itself SLS) for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.[1] Caprel bases his claims on three letters allegedly sent by SLS in connection with his mortgage debt. Two of the letters, sent to Caprel's lawyer in Fall 2015, supposedly contained false and misleading representations under § 1692e. R. 33, Third Am. Compl.[2] The third letter, dated January 2016, was sent to Caprel directly. *Id.* Caprel contends that this letter ran afoul of § 1692c's prohibition against direct communication to a consumer represented by an attorney. *Id.* SLS now moves to dismiss Caprel's Third Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. R. 36, Mot. to Dismiss. For the reasons stated below, the motion to dismiss is denied.

---

[1]This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

[2]Citations to the docket are indicated by "R." followed by the docket entry and, where applicable, a page or paragraph number.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Third Amended Complaint (for convenience's sake, the "Amended Complaint"). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Caprel is an Illinois resident who defaulted on his mortgage debt. Third Am. Compl. ¶¶ 4, 11. After he defaulted, Caprel filed for bankruptcy in October 2014; by February 2015, he had discharged the mortgage debt. *Id*. ¶¶ 13, 14.

But several months after the debt had been discharged, Caprel's lawyer received a pair of letters from SLS, the debt collector that had acquired and was servicing Caprel's mortgage loan (together, call them the "HAMP Solicitation Letters"). Third Am. Compl. ¶¶ 11, 16, 19; R. 36-1, Mot. to Dismiss at Exh. A, 10/8/15 HAMP Solicitation Letter; R. 36-2, Mot. to Dismiss at Exh. B, 11/8/15 HAMP Solicitation Letter.[3] Each letter contained a "Frequently Asked Questions" section that addressed general inquiries about mortgage loan defaults, HAMP loan modifications, and home foreclosures. 10/8/15 HAMP Solicitation Letter at 15; 11/8/15 HAMP Solicitation Letter at 3. One of the "FAQs" asserted that mortgage defaults would be reported to credit reporting agencies:

> Q: Will My Credit Score Be Affected by My Late Payments or Being in Default? A: *The delinquency status of your loan will be reported to credit reporting agencies* as well as your entry into a Repayment Plan, Forbearance

---

[3]Although Caprel did not attach the two HAMP Solicitation Letters to the Amended Complaint, they may be considered for the purposes of this Opinion because they are "attached to [SLS's] motion to dismiss[,] … referred to in [Caprel's] complaint[,] and [] central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

Plan, or Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements.

*Id.* (emphasis added).

In December 2015, Caprel incorporated the HAMP Solicitation Letters into this FDCPA lawsuit against SLS. R. 13, Second Am. Compl. But even after this lawsuit was filed, Caprel continued to receive communications about the discharged mortgage. On January 15, 2016—three months *after* Caprel filed this lawsuit—the law firm Anselmo Lindberg Oliver, LLC ("ALO," for short) sent a letter demanding payment of the outstanding mortgage debt (call it the "ALO Letter"). Third Am. Compl. ¶ 25, Exh. A, ALO Letter. Unlike the HAMP Solicitation Letters, the ALO Letter was sent directly to Caprel, not to his lawyer. The subject line of the ALO Letter referenced the mortgaged property, as well as SLS's role as servicing agent:

> Re:  1751 Sussex Walk G, Hoffman Estates, Illinois 60169
> Specialized Loan Servicing LLC, as servicing agent for Wells Fargo Bank, N.A. as Trustee for the MASTR Asset Back Securities Trust 2007-NCW Mortgage Pass-Through Certificate Series 2007-NCW

ALO Letter. The body of the Letter stated that its purpose was to collect a debt, identified SLS as the creditor, and presented ALO as an agent of the mortgage holder:

> 1. This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> 2. This office is a debt collector and represents the holder of a Mortgage and Note on the above captioned property.
>
> 3. Specialized Loan Servicing LLC, as servicing agent for Wells Fargo Bank, N.A. as Trustee for the MASTR Asset Backed Securities Trust 2007-NCW

Mortgage Pass-Through Certificates Series 2007-NCW is the creditor to whom the debt is owed.

ALO Letter. Caprel claims that all three letters—the two HAMP Solicitation Letters and the ALO Letter—violate the Fair Debt Collection Practices Act and seeks monetary relief from SLS.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

Caprel brings two claims under the FDCPA. Third Am. Compl. ¶¶ 27-28. First, Caprel alleges that the HAMP Solicitation Letters were "false, deceptive, or misleading" in violation of 15 U.S.C. § 1692e. *Id.* ¶¶ 28. Second, Caprel contends that the ALO Letter was a direct communication with a consumer represented by an attorney, and therefore violated 15 U.S.C. § 1692c. *Id.* ¶ 28. SLS now moves to dismiss the Amended Complaint for lack of standing and for failure to state a claim. Mot. to Dismiss.

SLS presents three grounds for dismissal: (1) Caprel does not have standing because he fails to allege any actual harm, Mot. to Dismiss at 5-7; (2) the HAMP Solicitation Letters cannot give rise to a claim because they were not false, deceptive or misleading to a competent attorney, *id.* at 7-11; and (3) SLS cannot be liable for the ALO Letter because the letter came from ALO, not SLS, *id.* at 11-12. The Court addresses each of SLS's arguments in turn.

## A. Standing

The first issue is whether Caprel has alleged an injury-in-fact—a requirement for Article III standing—when he does not claim that he suffered financial injury as a result of SLS's actions. SLS argues that, in the absence of a

"concrete and particularized injury," Caprel has no standing to sue. Mot. to Dismiss at 5. But "intangible injuries can nevertheless be concrete," and Congress may create a statutory cause of action for those injuries. *Spokeo v. Robins*, 136 S.Ct. 1540, 1549 (2016). And the Seventh Circuit has consistently found that the "FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998); s*ee also Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013).

Here, Caprel argues that the HAMP Solicitation Letters contained unlawful threats to report his discharged mortgage debt. Third Am. Compl., ¶¶ 16-24; R. 44, Pl.'s Resp. Br. at 1, 5-6. Even though Caprel does not assert specific monetary damages in the Amended Complaint, SLS's alleged misdeeds could have caused concrete—albeit intangible—injuries. Misleading and false debt-collection communications can drain a debtor's (or his attorney's) time and resources, and cause fear and anxiety. If Caprel and his attorney ignored the letters, they would have done so at Caprel's peril, because a false report to credit reporting agencies of a mortgage debt (which had already been discharged) almost surely would impair Caprel's creditworthiness. That consumption of time and the fear of a false report are quite unlike *Spokeo*'s example of an inaccurate zip code, which would not result in concrete harm. 136 S. Ct. at 1550. And debt-collection letters sent directly to a represented debtor—like the ALO Letter—can cause that debtor confusion, and require him to spend time and effort deciphering the letter, deciding how to respond, and contacting his attorney. So just because Caprel has not suggested that

receiving the HAMP Solicitation or ALO Letters caused him to incur *financial* injury, that does not mean that he has suffered *no* injury at all for Article III purposes.

SLS urges this Court to deviate from Seventh Circuit precedent permitting recovery for statutory violations of the FDCPA. Mot. to Dismiss at 7 n.1. But in our hierarchical court system, this Court must follow settled Seventh Circuit law, especially when *Spokeo* did not overrule it. Caprel has plausibly alleged an injury-in-fact and so has established Article III standing. So now the question is: has Caprel actually stated a claim?

## B. Section 1692e: Misleading or Deceptive Representations

First, the Court considers Caprel's claim arising out of the FDCPA's prohibition on misleading or deceptive representations. Among the prohibited representations is "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5); *Lox v. CDA, Ltc.*, 689 F.3d 818, 825 (7th Cir. 2012) ("…[I]t is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass."). Caprel alleges that the HAMP Solicitation Letters were misleading and deceptive—and so violated § 1692e—because they threatened to report his discharged debt to credit reporting agencies. Third Am. Compl. ¶¶ 18-20, 22-24; 10/8/15 HAMP Solicitation Letter at 15; 11/8/15 HAMP Solicitation Letter at 3; Pl.'s Resp. Br. at 1. This is something that SLS could not legally do, as "[d]unning people for their discharged debts would undermine the 'fresh start' rationale of bankruptcy

(bankruptcy as a system of debtors' rights as well as creditors' remedies), and is prohibited by the Fair Debt Collection Practices Act." *Ross v. RJM Acquisitions Funding LLC,* 480 F.3d 493, 495 (7th Cir. 2007). So the question is whether the HAMP Solicitation Letters—specifically, the Frequently Asked Questions threatening to report Caprel's delinquency—were misleading within the meaning of § 1692e.

Because the HAMP Solicitation Letters were sent to Caprel's attorney, and not Caprel, the Court evaluates the allegedly misleading statements under the "competent lawyer" standard. *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774-75 (7th Cir. 2007). SLS, for its part, argues that a competent attorney would not read the FAQ as a threat because the FAQ stated that SLS would only report Caprel's debt delinquency "in accordance with the requirements of the Fair Credit Reporting Act." *See* 10/8/15 HAMP Solicitation Letter at 15; 11/8/15 HAMP Solicitation Letter at 3; Mot. to Dismiss at 8. The argument goes that, since a competent attorney should know that the FDCPA barred SLS from reporting the discharged debt, the attorney would not be deceived into treating the FAQ as a credible threat. Mot. to Dismiss at 9.

Caprel acknowledges that a competent lawyer would be aware that—as a matter of *law*—"there is no circumstance that [allows] a mortgage servicing company [to] report delinquency of a debtor to a credit bureau when the debt is [d]ischarged in a Bankruptcy." Pl.'s Resp. Br. at 5 (emphasis in original removed). But Caprel argues that, in actual *practice*, "mortgage servicing companies falsely

report debts as open and/or delinquent for Debtors[] who have been discharged in Bankruptcy," so SLS's threat was a real one for practical purposes. Third Am. Compl. at ¶ 23. Caprel further contends that he "will be able to provide evidence to this Court to show that a Competent Lawyer would indeed believe that Defendant would report Plaintiff's delinquent payments to the credit bureaus." *Id.* ¶ 24. At this stage of proceedings—when the Court is required to accept Caprel's allegations as true, *Erickson*, 551 U.S. at 94—Caprel has alleged enough to survive a motion to dismiss. If mortgage servicing companies do illegally report discharged debts despite the FDCPA's proscription against that action, then a competent attorney may reasonably interpret the threat as a genuine one, notwithstanding the debt collector's promise to abide by the FDCPA.[4] Indeed, in light of the discharge of the mortgage debt in bankruptcy, there was no basis to send any letters about the debt at all, so it would be reasonable for Caprel's attorney to fear that debt collection attempts would move forward and that the promise to follow the FDCPA was an empty one. The FDCPA would be toothless if a debt collector could make all manner of misleading representations and threats, and yet avoid any liability by merely

---

[4]As to the issue of whether the HAMP Solicitation Letters contained *false* statements, the Complaint generally alleges that SLS's conduct violated § 1692e "in that [SLS] used false, deceptive, or misleading representation … ." Third Am. Compl. ¶ 28. But Caprel does not identify any specific statement as false. Nor does he correct the defects in the false-representation claim that the Court identified in its Opinion granting SLS's motion to dismiss the Second Amended Complaint. R. 32, 9/7/16 Opinion at 18-21 (holding that a competent lawyer reading the FAQ as a whole—considering the threat to report together with the disclaimer that SLS would only act in accordance with the FDCPA—would not have been deceived because the falsehood was readily discoverable). Therefore, the Court does not consider the issue of false communication.

adding a blanket disclaimer saying, in effect, "Please ignore all the threats if they violate the FDCPA."

## C. 15 U.S.C. § 1692c: Direct Communication

Next up is Caprel's § 1692c claim. That section bars debt collectors from communicating directly with a consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2). Caprel alleges that SLS (through a law firm) sent him the ALO Letter, even though SLS knew that he had a lawyer. Third Amend. Compl. ¶¶ 25, 27; Pl.'s Resp. Br. at 3-4. To this, SLS responds that it is not responsible for the ALO Letter and, even if it were, it did not know that Caprel was represented by counsel in connection with the mortgage debt.

### 1. SLS's Liability

SLS contends that it did not send the ALO Letter, so any claims arising out of the Letter can only be brought against ALO. Mot. to Dismiss at 11-12. But Caprel argues that, because ALO sent the Letter on SLS's *behalf*, SLS remains responsible for the Letter and any wrongdoing that came out of it. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (holding that the FDCPA requires "a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf").

As evidence of the SLS-ALO relationship, Caprel points to the subject line of the ALO Letter, which stated that the Letter was sent with regard to "Specialized Loan Servicing LLC, as servicing agent for Wells Fargo Bank, N.A." Pl.'s Resp. Br. at 3; ALO Letter. What's more, in paragraphs two and three of the Letter, ALO asserted that it "represents the holder of a Mortgage and Note on the [relevant] property" and that "Specialized Loan Servicing LLC, as servicing agent for Wells Fargo Bank, N.A. as Trustee for the MASTR Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW *is the creditor to whom the debt is owed.*" *Id*. (emphasis added). Reading these statements together, it is reasonable to infer (and that is enough at the dismissal-motion stage) that ALO represented SLS and contacted Caprel on SLS's behalf.

## 2. Knowledge of Representation

SLS's next argument is that the Letter did not violate § 1692c(a)(2) because Caprel was not "represented by an attorney with respect to such debt." *See* 15 U.S.C. § 1692c(a)(2); Mot. to Dismiss at 11-12. SLS argues that the subject of the ALO Letter was Caprel's "mortgage lien debt and foreclosure." Mot. to Dismiss at 11. And, according to the docket for the foreclosure action against the mortgaged property, Caprel had represented himself *pro se* in the foreclosure proceeding. *Id.* at 12; R. 37, Cook County Circuit Court Summary for Case Number 2016-CH-00949. But the foreclosure on the property and the collection of the mortgage debt are two separate matters, and the letter is at least plausibly read as a collection letter. The first sentence of the ALO Letter declared that "This is an attempt to collect a debt

and any information will be used for that purpose." ALO Letter. The Letter further stated that SLS "is the creditor to whom the debt is owed" and claimed that Caprel owed $139,952.96. *Id.* The account number assigned to the debt is on the letter. *Id.* So the debt is referred-to all over the Letter, and yet the Cook County Circuit Court case is not once mentioned, whether by title, name, number, or anything. From this, it is reasonable to infer that the ALO Letter was written to collect on the debt, and not as some communication about the mortgage foreclosure case.

Caprel has sufficiently alleged that SLS knew he was represented by counsel in connection with the mortgage debt but contacted him anyway. Only a few months before the ALO Letter went out, SLS sent the two HAMP Solicitation Letters— discussing that same mortgage debt—to Caprel's attorney. 10/8/15 HAMP Solicitation Letter; 11/8/15 HAMP Solicitation Letter. And as of the date of the ALO Letter, Caprel had already filed this lawsuit against SLS—*through his attorney*— alleging that the HAMP Solicitation Letters violated the FDCPA, and asserting that his mortgage debt had been discharged in bankruptcy. R. 13, Second Am. Compl. Caprel's § 1692c claim against SLS survives.

## IV. Conclusion

For the reasons stated above, SLS's motion to dismiss, R. 36, is denied. The status hearing of May 30, 2017, is accelerated to May 17, 2017, at 9:15 a.m. Before the next status hearing, the parties shall start settlement negotiations in an effort to resolve the case as soon as practicable.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 4, 2017